UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20336-CIV-HUCK/SIMONTON

CONSENT CASE

SUSAN F. SOCAS,

    Plaintiff,

v.

NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,

    Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL BETTER RESPONSES TO ITS FIRST REQUEST FOR PRODUCTION

Presently pending before the Court is Defendant's Motion to Compel Better Responses to its First Request for Production (DE # 45). This matter has been fully briefed (DE ## 49 & 58) and referred to the undersigned Magistrate Judge based upon the consent of the parties (DE # 13). Following a review of the record and for the reasons stated herein, it is hereby **ORDERED** that Defendant's motion is **GRANTED IN PART AND DENIED IN PART**.

I.    INTRODUCTION

This is an insurance coverage dispute, in which Plaintiff, Susan Socas, filed a claim in July 2007 to attempt to recover benefits from her insurer and Defendant in this litigation, Northwestern Mutual Life Insurance Company ("Northwestern"), for injuries she sustained in a September 1995 car accident. Northwestern challenges Plaintiff's claim, arguing that she is not totally disabled.

## II.     LEGAL STANDARDS

### A.     Timeliness

The Local Rules Provide that:

> All motions related to discovery, including . . . motions to compel discovery . . . shall be filed within thirty days of the occurrence of grounds for the motion. Failure to file discovery motion within thirty days, absent a showing of reasonable cause for a later filing, may constitute a waiver of the relief sought.

S.D. Fla. L.R. 26.1.H.  Although the "occurrence of grounds for the motion" is usually the filing of responses and objections to a discovery request, the fact that the Rule employs general language indicates that this is not always the case.  *See United States v. Certain Real Property Known as and Located at 649 Polo Pointe Way, Delray Beach, Fla.*, 444 F. Supp. 2d 1258, 1261 (S.D. Fla. 2006). Moreover, even if the time to file a motion to compel discovery is untimely under the Rule, a court may excuse the untimeliness upon a showing of "reasonable cause."

### B.     Merits

The permissible scope of a request for production of documents pursuant to Federal Rule of Civil Procedure 34 is measured by the limitations imposed by Federal Rule of Civil Procedure 26, which defines relevant information expansively, as any matter "reasonably calculated to lead to the discovery of admissible evidence."  And yet, pursuant to Federal Rule 26, the Court may restrain any discovery requests that are overbroad or would be unduly burdensome to produce.

## III. THE INSTANT MOTION

### A. Timeliness

This motion was timely filed. Northwestern served its First Request for Production on Plaintiff on May 9, 2007, and Plaintiff served her initial responses on June 27, 2007 ("Initial Responses"). After discussions among counsel regarding the inadequacy of Plaintiff's Initial Responses, Plaintiff served supplemental responses on September 5 and 11, 2007 ("Supplemental Responses"). Based in part on evidence that it did not receive until November 19, 2008 and did not examine until November 28, 2007, Northwestern became convinced that the Supplemental Responses were also incomplete, and thereafter filed the instant motion on December 21, 2007.

Northwestern avers that counsel for both parties were conducting negotiations with regard to these discovery requests as late as November 2007 (DE # 58 at 2) and that Northwestern was only put on notice of the inadequacy of Plaintiff's Supplemental Responses after it had reviewed documents it received pursuant to a discovery request it had served on a third party.

The date Northwestern examined the documents produced by State Farm and discovered inconsistencies between those documents and Plaintiff's discovery responses – November 28, 2007 – is the occurrence of grounds for the motion. *See 649 Polo Pointe Way,* 444 F. Supp. 2d at 1261. Even if the occurrence of grounds for the motion could have fallen at a date prior to November 21, 2007, this Court finds that the parties' attempts to negotiate a resolution to their discovery disputes and the late discovery of materials inconsistent with Plaintiff's discovery responses constitute reasonable cause for considering the merits of the instant motion. *See* S.D. Fla. L.R. 26.1.H.

**Northwestern claims it is entitled to better responses to the following discovery requests, which the Court, having found that the motion was timely filed, will address in turn below:**

**B.     Request Nos. 1-2**

**1.     Background**

**Northwestern sought the production of "Plaintiff's personal calendar and/or diary from January 1987 to the present" (Request No. 1) and "Plaintiff's appointment records or calendar relative to her activities[ ] as a dentist and/or in conjunction with Plaintiff's management, operation and ownership of her dental practice from 1987 to the present" (Request No. 2).**

**Plaintiff objected to these requests in its Initial Responses, arguing that they did not exist, and even if they did exist, that they were overbroad and irrelevant. As part of her Supplemental Responses, Plaintiff asserted that she did not keep personal or professional calendars beyond the current year and that she was only able to respond to Request Nos. 1-2 by producing her 2007 calendars.**

**2.     The Parties' Positions**

**Northwestern contends that State Farm Automobile Insurance Company ("State Farm") responded to a separate discovery request that Northwestern had served on it by attaching Plaintiff's calendar records for the period of June 5, 1995 to November 22, 1995. Northwestern claims that these responsive documents were in Plaintiff's "control," under the meaning of the Federal Rules and should have been provided to Northwestern as part of Plaintiff's discovery responses. In light of this recent disclosure, Northwestern argues that "it is inconceivable that calendar records responsive to these requests do not exist beyond the calendar year," and Plaintiff should**

4

therefore be required to conduct a renewed search and provide any responsive documents that are in her possession or in the possession of a third party. Northwestern also presumes that Plaintiff has a professional obligation to maintain patient and appointment records and reminds Plaintiff that any renewed search for documents, like her original search, must encompass electronic sources of information that may be stored on a computer or other electronic data storage device (DE # 45 at 8).

Plaintiff maintains that she only keeps calendars and appointment books for the given year, and that State Farm was only in possession of her June-November 1995 calendar was because she provided them to State Farm in 1995, the date the car accident occurred. She claims that an additional search would be a futile exercise, and that this Court has no choice but to accept her representation that she has fully produced all responsive materials within her possession or control.

    3.    <u>Analysis</u>

Notwithstanding the fact that Plaintiff herself should have produced the records in State Farm's possession, the undersigned concludes that State Farm's maintenance of Plaintiff's June-November 1995 calendars, which transferred to them soon after the 1995 accident, do not inescapably lead to the conclusion that Plaintiff is hoarding responsive documents in violation of her discovery obligations.

On or before March 18, 2008, Plaintiff shall file a sworn statement with this Court that (1) addresses whether she has taken all steps necessary to comply with her obligation to produce all responsive records within her possession or control, such as demanding responsive documents that are within her control but in the possession of third parties, and searching all electronic sources of potentially responsive documents; (2) describes, in detail, the efforts she undertook to respond to this discovery request;

and (3) explains her failure to produce the documents that State Farm produced.  If Northwestern has reason to believe that it is necessary to compel further discovery, including Plaintiff's deposition, it shall file a motion with this Court.

**C.    Request No. 3**

**1.    Background**

In Request No. 3, Northwestern sought records concerning Plaintiff's activities as an instructor at the Florida College of Dentistry Hialeah Dental Clinic ("FCD")[1] between 1990 and the present.  Plaintiff acknowledged in her Initial Response that she attends FCD twice a week, as she has since 1996, and submitted a copy of her Curriculum Vitae.  In her Supplemental Response, Plaintiff provided various other relevant documents (DE # 45 at 9).

**2.    The Parties' Positions**

Northwestern asserts that Plaintiff's Supplemental Responses are incomplete because: (1) the letters from third parties verifying Plaintiff's twice-weekly attendance at FCD only reflect her attendance between 2001 and 2006, but not before 2001; (2) Plaintiff only produced certain pages of a handbook, but not a complete copy of the handbook; and (3) Plaintiff failed to provide any syllabi for the courses she taught.  Plaintiff insists that she has produced all responsive documents and specifically adds that "[t]here are no syllabi for her courses" (DE # 49 at 11).

---

[1]    Northwestern's request for production refers to "the Florida College of Dentistry Hialeah Dental Clinic," while Plaintiff's Initial Response refers to "the Florida College of Dentistry," and Plaintiff's Supplemental Response refers to "the University of Florida College of Dentistry" (DE # 45 at 9).  Despite the inconsistent terminology, the undersigned presumes that all three "Florida Colleges of Dentistry" refer to the same institution.

### 3. Analysis

On or before March 18, 2008, Plaintiff shall file a sworn statement with this Court that (1) addresses whether she has taken all steps necessary to comply with her obligation to produce all responsive records within her possession or control, such as demanding responsive documents that are within her control but in the possession of third parties, and searching all electronic sources of potentially responsive documents; (2) describes, in detail, the efforts she undertook to respond to this discovery request; (3) that states whether she generated or maintained syllabi for the courses she taught; (4) that explains why she could not produce a letter to verify her attendance at FCD prior to 2001, and why she could produce only certain pages of the handbook, but not a complete copy of the handbook, which she produced in response to this discovery request.  If Northwestern has reason to believe that it is necessary to compel further discovery, including Plaintiff's deposition, it shall file a motion with this Court.

### D. Request No. 9

#### 1. Background

Northwestern sought, in Request No. 9, all of Plaintiff's financial records evidencing income earned by Plaintiff from any source from January 1, 1987 to the present.  While maintaining that the request was overbroad in scope and unduly burdensome, Plaintiff produced her personal and corporate tax returns from 1993-2006, and, in her Supplemental Responses, produced her Income Summary Totals and Expense Log Summaries for the years 1993-2000.

#### 2. The Parties' Positions

Northwestern argues that, although Plaintiff "provided hand-written ledgers for years from 1993 to 2000, [she] failed to provide any back-up information to support the

ledgers" (DE # 45 at 10).  Plaintiff responds that she is only required to provide the materials within her possession or control that are responsive to the discovery request, and "back-up information" is not necessary.  She further contends that any responsive documents within the possession of her accountant are shielded by Florida's accountant-client privilege doctrine (DE # 49 at 12).

        3.    <u>Analysis</u>

As this Court held in a recent discovery order issued in the case at bar, Plaintiff is simply not entitled to argue that she may refuse to produce responsive documents within her possession or control on the grounds that Northwestern is capable of gleaning the information from other documents that she has already produced (DE # 57 at 3-4 n.1).  Regardless of whether they are identified as "back-up information," or some other name, if there are documents within Plaintiff's possession or control that are responsive to Request No. 9, they must be produced.  If Plaintiff believes that any request seeks duplicative information that constitutes an undue burden, she must raise any objection in a manner that complies with the applicable Federal and Local Rules.

This Court rejects Plaintiff's argument concerning the accountant-client privilege.  As Florida's Third District Court of Appeal succinctly observed, "[f]inancial records and data which are not privileged in the hands of the client cannot be shielded from discovery . . . by transferring them to the client's accountant."  *Paper Corp. of Am. v. Schneider*, 563 So. 2d 1134, 1135 (Fla. 3d DCA 1990).  The privilege encompasses only those "communications between a public accountant and its client made in the rendition of accounting services to the client [such as] audit workpapers and related documents prepared by an accountant[,] financial records and workpapers in accountant's possession[, and] confidential memorand[a] prepared by accountant[s]," but not "non-

8

privileged financial information" that has been turned over to an accountant. *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 236 (M.D. Fla. 1994). Even if Plaintiff believed that any responsive material was truly privileged, there is no indication that she has filed a privilege log with respect to those documents as required.

Plaintiff is required to produce **all** records that are responsive to Request No. 9. Any objections based on undue burden or privilege must be asserted in a manner that complies with the Federal and Local Rules in order to merit consideration by this Court. On or before March 18, 2008, Plaintiff shall also file a sworn statement with this Court that (1) addresses whether she has taken all steps necessary to comply with her obligation to produce all responsive records within her possession or control, such as demanding responsive documents that are within her control but in the possession of third parties, and searching all electronic sources of potentially responsive documents; and (2) describes, in detail, the efforts she undertook to respond to this discovery request.

      E.      Request No. 10

           1.      Background

In Request No. 10, Northwestern sought the production of personnel information for Plaintiff's employees (including temporary and part-time employees), such as their personnel files, evaluations, payroll slips, time records, attendance records, insurance forms and correspondence. Although Plaintiff produced her corporate tax returns for the years 1993-2006, as mentioned above, she maintained in her Initial and Supplementary Responses that this request was overbroad and unduly burdensome.

### 2.      The Parties' Positions

Northwestern contends that these records are relevant to the issue of damages; to indicate the nature of work performed by Plaintiff; and, to reveal potential witnesses who are capable of testifying about the extent to which Plaintiff's alleged disability affected her work (DE # 45 at 12). Plaintiff responds that this discovery request is an "unwarranted intrusion into [Plaintiff's employee's] personal information," and because Northwestern is already aware of Plaintiff's sole employee, Northwestern's claim that the personnel information will reveal potential witnesses is, therefore, disingenuous (DE # 49 at 13).

### 3.      Analysis

On one hand, Northwestern is not obligated to take Plaintiff's word that she has not hired any employee (including part-time or temporary employees) since 1987, other than the lone employee that Northwestern already knows exists. On the other hand, in the absence of a confidentiality order, "there is a strong public policy against the public disclosure of personnel files." *Williams v. The Art Institute of Atlanta*, 2006 WL 3694649, at * 10 (N.D. Ga. Sept. 1, 2006) (unpublished op.). On balance, the information that might be gleaned from the employee records of third parties is only likely to be tangentially related to the matters at issue in this case, and, for the most part, can be discovered by other means. For instance, it is unclear how another employee's personnel file would bear directly on Plaintiff's physical condition, and there are avenues available to Northwestern to determine such things as "standard business dental practices" and the credibility of Plaintiff's claims relating to the income that she has reported that do not require it to peruse the private files of a third party. However, the undersigned finds that time and attendance records may lead to relevant admissible evidence concerning the

ability to observe Plaintiff at work. These records to not infringe on the privacy concerns highlighted by Plaintiff. Therefore, the request is granted as to those records for all employees.

### F. Request No. 11

#### 1. Background

In Request No. 11, Plaintiff sought the production of any documents, such as time sheets, relating to the amount of time that Plaintiff worked between 1987 and the present. While objecting on the grounds of overbreadth and undue burden, Plaintiff produced the tax returns mentioned above and stated, in her Supplemental Responses, that she has never kept any such documents in the time that she has been in practice (DE # 45 at 12). Plaintiff has also produced a Production Summary by Category, which shows procedures performed and amount charged for all procedures (DE # 49 at 13).

#### 2. The Parties' Positions

Northwestern states that it is inconceivable that Plaintiff has never maintained these types of documents, which are necessary to report income taxes and to bill patients for work performed; and, that it believes that computer records of the existence of these documents must exist (DE # 45 at 13). Plaintiff responds that she bills patients based on the procedure performed, not according to time, and therefore Northwestern is required to accept her representation that she does not possess any responsive documents other than those she has already produced (DE # 49 at 14).

#### 3. Analysis

There is no indication that Plaintiff possesses any time records which she has not produced. However, consistent with the ruling on other requests, on or before March 18, 2008, Plaintiff shall file a sworn statement with this Court that (1) addresses whether she

has taken all steps necessary to comply with her obligation to produce all responsive records within her possession or control, such as demanding responsive documents that are within her control but in the possession of third parties, and searching all electronic sources of potentially responsive documents; (2) describes, in detail, the efforts she undertook to respond to this discovery request; (3) addresses Northwestern's assertions that Plaintiff is under a professional obligation to maintain the requested records; and (4) states clearly whether the information Northwestern seeks in Request No. 11 was ever entered into a computer or other electronic data storage device.

G.      Request No. 13

1.      Background

Northwestern sought, in Request No. 13, all documents relating to Plaintiff's travel, including seminars and conventions, between 1995 and the present. Plaintiff did not object to this request, but only submitted a copy of her continuing dental education record from 1987 to the present. Although it is not reflected in Northwestern's briefs, Plaintiff noted, in its response to the instant motion, that she also submitted a copy of her passports dating back to 1984 (DE # 49 at 14).

2.      The Parties' Positions

In light of Plaintiff's claim that she cannot perform the duties of her profession, Northwestern asserts that the moving, lifting and long periods of sitting that are associated with travel are relevant to her physical condition (DE # 45 at 13). To the extent that Plaintiff is no longer in possession of pertinent documents, Northwestern argues, she is under a duty to cull those documents from sources within her control, such as airlines and credit card companies. Plaintiff argues that "[i]t is the **specific**

**and repetitive** procedures [she] performs as a dentist that renders [sic] her disabled under the policy," and that "[h]er ability to travel reveals nothing about her physical capabilities to practice full-time dentistry" (DE # 49 at 14).

      3.     <u>Analysis</u>

This Court rejects Plaintiff's arguments. Clearly, performing one strenuous activity is indicative of an individual's capacity to perform another strenuous activity, even if the two are not identical. Even if there are aspects of traveling, such as lifting luggage or long periods of walking, that Plaintiff may have avoided while at work, there are also some unavoidable aspects of traveling, such as having to remain seated for extended periods of time, that Plaintiff was most likely required to perform at work. Even if this Court were inclined to credit Plaintiff's position that the documents requested are irrelevant, she waived the argument by mentioning it for the first time in her response to the instant motion to compel and failing to timely raise it as an objection to Northwestern's original request for production.

      H.     <u>Request No. 14</u>

      1.     <u>Background</u>

In Request No. 14, Plaintiff sought documents relating to Plaintiff's cell phone records, including monthly statements, from 1995 to the present. Plaintiff objected that the records were irrelevant and that producing them would constitute an invasion of privacy that outweighed any relevance they might have (DE # 45 at 14).

      2.     <u>The Parties' Positions</u>

Northwestern argues that the records requested are relevant: (1) to show whether Plaintiff is performing the principal duties of her occupation by talking to her patients

13

and employees over the phone; (2) to show any variance in her activities before and after the accident; and (3) to reveal potential witnesses to might impeach or corroborate her claims of disability.  Northwestern further argues that the information that appears on a cellular phone statement – the telephone number, date and time of the call, and possibly the cell tower nearest the place the call was made or received – do not constitute an undue invasion of privacy.  Finally, Northwestern adds that in a similar case in this District, the Court ordered the production of telephone records (DE # 45 at 15).

Plaintiff responds that the records sought are irrelevant because she continues to work part-time, and thus her phone calls with patients or employees would not be contrary to her position in this case.  She also claims that the case in which telephone records were required to be produced involved distinguishable facts (DE # 49 at 9).

      3.    <u>Analysis</u>

The parties dispute whether the instant case is similar to *Bifulco v. The Northwestern Mut. Life Ins. Co.*, Case No. 04-21434-HUCK/TURNOFF, in which a Court in this District ordered the production of similar cell phone records.  Whereas this case presents a pure question of physical disability, the claimant in *Bifulco* allegedly suffered neurological, neurocognitive and psychological maladies, as well as physical disabilities, stemming from his accident.  Thus, his cell phone records were especially relevant to his claim that he was "unable to engage in social, recreational, or business activities."  *Id* at 2.  That is not to say that Plaintiff's cell phone records in this case are not at all relevant to her claim that she is unable work full-time as a dentist, but they are certainly less relevant in the context of the instant case than they were in the context of the *Bifulco* case.

While a comparison to the *Bifulco* case alone might make for a close call on this

14

question, the Court has the benefit of considering this document request in the context of the case as a whole.  The Court recalls that Plaintiff claimed to employ a single employee (including all temporary and part-time employees) during her twenty years in practice, and that Plaintiff cited privacy concerns of that third-party employee to resist Northwestern's request to examine her personnel file to test that claim and perhaps uncover additional witnesses.  In light of those facts, Plaintiff must permit Northwestern to review her cell phone records for the purpose of attempting to discover witnesses that are knowledgeable about Plaintiff's alleged disability and how it affected her performance at work.

As in the *Bifulco* case, the Court finds that Plaintiff's request for "any and all documents evidencing or related to all of Plaintiff's cell phone account [sic] and/or cell phone use," is overbroad as written.  Plaintiff is only required to produce her monthly cell phone statements.

    I.    <u>Request No. 24</u>

        1.    <u>Background</u>

In Request No. 24, Northwestern sought the following:

> Any and all documents relating to Plaintiff's accident that occurred on September 6, 1995, including insurance policies, files or claims relative to benefits or coverage to the Plaintiff for any claimed injury or damages including . . . group insurance policies, coverage, and insurance policies thereof, involved in the subject accident [as well as] documents and photo[graph]s relative to damage to all vehicles involved in said accident

(DE # 45 at 15).  Plaintiff's Initial Response asserted that the request was irrelevant and overbroad, yet she provided the crash report as part of her Supplemental Responses.

### 2. The Parties' Positions

Plaintiff argues that she has already attempted to retrieve responsive documents from such places as the hospitals that treated her injuries after the accident, but because the accident occurred over a decade ago, "it should come as no surprise . . . that all documentation relating to the accident is not available" (DE # 49 at 15). Northwestern contends that Plaintiff failed to diligently search her records, because Northwestern was able to obtain responsive documents directly from State Farm that Plaintiff did not produce on her own. Consequently, Northwestern insists that Plaintiff be required to undertake a renewed complete search of her records for documents that she controls but did not produce, like those produced by State Farm.

### 3. Analysis

On or before March 18, 2008, Plaintiff shall file a sworn statement with this Court that (1) addresses whether she has taken all steps necessary to comply with her obligation to produce all responsive records within her possession or control, such as demanding responsive documents that are within her control but in the possession of third parties, and searching all electronic sources of potentially responsive documents; (2) describes, in detail, the efforts she undertook to respond to this discovery request; and (3) that explains her failure to produce the documents that State Farm produced.

### J. Costs

Northwestern also moved to shift the burden of the costs incurred in advancing the motion onto Plaintiff pursuant to Federal Rule of Civil Procedure 37(a). If a motion to compel is granted in part, the Court "may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties ... in a just manner." Fed. R. Civ. P. 37(a)(4)(C).

**Though the Court has granted, in part, this motion to compel, under the circumstances of this case, the undersigned finds that the imposition of costs pursuant to Rule 37 is not justified.** The undersigned notes that much of the present dispute concerns whether Plaintiff's claim of production is accurate; at present, there is no indication that this is not true.

IV.     CONCLUSION

**Having found that Northwestern's motion was timely filed, it is accordingly**

**ORDERED AND ADJUDGED** that Defendant's motion to compel (DE # 45) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1.     On or before March 18, 2008, Plaintiff shall file a sworn statement with this Court that

>    (a)     addresses whether she has taken all steps necessary to comply with her obligation to produce all responsive records within her possession or control, such as demanding responsive documents that are within her control but in the possession of third parties, and searching all electronic sources of documents that are potentially responsive to Request Nos. 1-3, 9, 11, 13 and 24;
>
>    (b)     describes, in detail, the efforts she undertook to respond to Request Nos. 1-3, 9, 11, 13 and 24;
>
>    (c)     explains her failure to produce the documents that State Farm produced relative to Request Nos. 1-2 and 24.
>
>    (d)     states whether she generated or maintained syllabi for the courses she taught, relative to Request No. 3;
>
>    (e)     explains why she could not produce a letter to verify her attendance at FCD prior to 2001, and why she could produce only certain pages of the handbook, but not a complete copy of the handbook, which Plaintiff produced in response to Request No. 3;
>
>    (f)     addresses Northwestern's assertions that Plaintiff is under a professional obligation to maintain the records sought in Request No. 11;

   **(g)** states clearly whether Plaintiff ever entered into a computer any information responsive to Request No. 11;

  **2.** On or before March 18, 2008, Plaintiff shall serve on Northwestern a complete response to Request No. 13, including all documents in Plaintiff's control which are in the possession of a third party.

  **3.** On or before March 18, 2008, Plaintiff shall serve on Northwestern Plaintiff's monthly cell phone statements from 1995 to the present.

  **4.** Plaintiff is under a continuing obligation to supplement any incomplete responses to Request Nos. 1-3, 9, 11, 14 and 24. Fed. R. Civ. P. 26(e)(2).

  **5.** Northwestern's motion to compel the production of Plaintiff's employee's personnel file (Request No. 10) is **DENIED**, except with respect to time and attendance records, which shall be produced on or before March 18, 2008.

  **DONE AND ORDERED** in Chambers in Miami, Florida on March 4, 2008.

*/s/ Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
All counsel of record