UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20336-CIV-SIMONTON
<u>CONSENT CASE</u>

SUSAN F. SOCAS,

    Plaintiff,

v.

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,

    Defendant.
_____/

<u>ORDER DENYING DEFENDANT'S MOTION FOR SPOLIATION SANCTIONS</u>

Presently pending before the Court is Defendant's Motion for Sanctions (DE # 89). This case is referred to the undersigned Magistrate Judge based upon the consent of the parties (DE # 13). This motion is fully briefed (DE ## 93, 98). On October 15, 2009, the undersigned held an evidentiary hearing on the motion. While both parties were given the opportunity to present evidence at the hearing, neither party wished to present evidence at the hearing. Based upon a careful review of the record, after considering the arguments of counsel, the undersigned has determined that it is appropriate to deny the motion at the present time with respect to the request that the case be dismissed; and, with respect to the request for a mandatory adverse jury instruction. However, Defendant may file a motion for a modified adverse jury instruction following the determination of the pending motion for summary judgment.

    I. <u>Background</u>

According to the Complaint, Plaintiff, Susan Socas, is a dentist who purchased five disability insurance policies from Defendant, The Northwestern Mutual Life Insurance Company (hereafter Northwestern). On September 6, 1995, Dr. Socas was

involved in a car accident which, she alleges, rendered her totally disabled. In 2005, Dr. Socas filed a claim for benefits, which Northwestern denied that same year. Subsequently, on February 8, 2007, Dr. Socas filed this lawsuit, claiming that Northwestern breached the relevant disability insurance contracts (DE # 1).

On August 29, 2005, while Northwestern was investigating Dr. Socas' disability claim, Northwestern asked Dr. Socas to provide the following information regarding the procedures she had performed during the period of her disability: (1) American Dental Association ("ADA") codes with a description of the service provided; (2) dates of service; (3) charges; and (4) a "monthly cumulative total of each intervention, i.e., office visits, office procedures, and specific dental procedures, e.g., filling, crown work, root canal, etc." This information was sought for each of the six months preceding the September 1995 accident as well as for each month thereafter (DE # 89, Ex. B at 7).

On September 10, 2005, Dr. Socas responded: "[I]t is impossible for me to give the ADA cumulative codes in the format requested. I would need to manually go through 10.5 years of charts and create tallies from that. The tortuous and overwhelming volume of work and time involved to obtain it is unrealistic; however, with each of my tax returns from 1993 - 2000 are attached an income and expense log tally which my previous accountant had me do each year manually before he retired. From 2001 - 2004 the income and expenses are in QuickBooks . . . ." (DE # 89, Ex. C at 12).

Later, on June 26, 2008, during discovery in the instant litigation, Northwestern served Dr. Socas with a Request for Production of Documents which sought, for each year between 1994 and 2008, a "monthly cumulative total of each intervention[,] i.e., office visits, office procedures, and specific dental procedures[, e.g.,] fillings crown work and root canals," as well as "ADA codes with descriptors for the service provided"

2

and "[d]ates of service and charges for each" (DE # 89, Ex. D at 18-20).

On August 11, 2008, Dr. Socas objected to Northwestern's Request

> on the grounds that this request is unduly burdensome, and to the extent the information sought still exists, it does not exist in the form of a monthly cumulative total of each intervention as sought.  As previously explained on numerous occasions, Plaintiff does not and never has entered billing information electronically (or in any other format conducive to providing a cumulative summary) but instead manually enters this information on charts and ledgers for each patient.  Therefore, it is unreasonably burdensome for Plaintiff to go through every single patient's file and tally up each and every procedure performed on each patient in order to arrive at each month's cumulative total for the year requested.

(DE # 89, Ex. E at 24-25).

On September 5 and 8, 2008, based on her objections to Northwestern's requests for monthly tallies of the dental procedures she performed, Dr. Socas closed her office to allow Northwestern to review her patient files, and provided Northwestern with "cheat sheets" to interpret the ADA codes found therein.  This resulted in Northwestern copying approximately 4,000 pages of patient files (DE ## 89, 93).

However, as Northwestern points out, Florida law permits dentists to purge inactive patients' files four years from the date of the patient's last visit; and, during the pendency of this lawsuit, Dr. Socas' office did not alter its routine practice of purging patient files in accordance with Florida law, even though the records are germane to these proceedings (DE # 89 at 7) (citing Fla. Stat. § 466.018(5)) ("All patient records . . . shall be maintained for a period of 4 years from the date of the patient's last appointment.").  Thus, Dr. Socas only provided Northwestern with files pertaining to patients who had last visited Dr. Socas in 2004 or thereafter.

In accordance with the ordinary course of Dr. Socas' practice, a sticker signifying

3

the present year is placed on the file of any patient that arrives for a dental appointment. Then, on an ongoing basis, Dr. Socas' assistant informally reviews the files and purges any file that has a sticker that reflects a date more than four years old (DE # 89, Ex. F1 at 22-23, 33-34; Ex. F2 at 21-23[1]; DE # 93, Ex. E at 3).[2]

## II. The Parties' Positions

Northwestern filed the instant motion based on a two-pronged argument. Northwestern's primary argument is that Dr. Socas had a *complete* archive of all patient files as of September 10, 2005, but that subsequent to that date, "she destroyed the only records that could disprove her allegations" (DE # 89 at 3).

Northwestern acknowledges that the applicable Florida law permits dentists to discard a patient's file four years from the date of the patient's last visit (hereinafter "inactive patient files"). It contends, however, that Dr. Socas disregarded this policy and kept all of her patient files, without exception, until 2005. Northwestern alleges that in 2005, Dr. Socas destroyed all but the bare minimum of patient records that she was statutorily required to retain, in an effort to frustrate Northwestern's ability to obtain evidence relevant, initially, to evaluating her disability claim, and then, to this lawsuit.

Dr. Socas refutes this characterization of her document retention policy and

---

[1] Northwestern filed Dr. Socas' deposition transcript as an attachment to the instant motion. Because of its volume, the transcript was filed in three separate parts, labeled "Exhibit 'F' Part 1 of 3", "Exhibit 'F' Part 2 of 3," and Exhibit 'F' Part 3 of 3" which will be referred to herein as (DE # 89, Ex. F1), (DE # 89 Ex. F2), and (DE # 89 Ex. F3), respectively, followed by the relevant page number.

[2] Dr. Socas testified in her deposition that although she was permitted to purge patient files that have been inactive for four years, the files were usually kept for five years (DE # 89, Ex. F1 at 22). The office assistant who actually carried out the policy, testified that, "[a]fter four years, more or less, one may destroy the records [and e]very time we get a chance to do so, when we see we have a lot of files that can be destroyed, then I periodically . . . destroy them." (DE # 93, Ex. E at 3).

argues that she has always purged inactive patient files, meaning that she "never had complete records of patients' files dating prior to the 1995 accident." Rather, Dr. Socas asserts, her "business practice is to discard records of patients whose last visit was over 4 years (inactive patients)" (DE # 93 at 5).

In the alternative, Northwestern argues that, even if Dr. Socas' regular business practice was to discard inactive patient files, she was obligated to suspend her ordinary business practice at the moment she became aware that *all* patient files were relevant to her disability claim and any subsequent lawsuit, which occurred in August 2005, when Northwestern requested a tally of the procedures she performed to evaluate her disability claim; or, by April 2006 at the latest, when Dr. Socas hired her present litigation counsel. Northwestern specifically claims:

> The 2001-2002 period is of special interest because property records and recent discovery reflect that Plaintiff purchased a new office and expanded her office space in 2002. Northwestern is prejudiced by its inability to examine records that could show, contrary to Plaintiff's contention, that Plaintiff's practice was thriving during this period and that she was performing dental procedures she now claims to be unable to perform, with frequency.

(DE # 89 at 8).

Northwestern filed the instant motion requesting the Court to enter a judgment in its favor; or, to instruct the jury to draw an adverse inference against Dr. Socas at trial on the issue of whether she is able to perform the principal duties of her occupation notwithstanding the injuries she sustained in the 1995 car accident.

### III. Legal Framework For Analysis

In *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005), the Eleventh Circuit Court of Appeals concluded that "federal law governs the imposition of sanctions

for failure to preserve evidence in a diversity suit." *Id.* at 944. The Court noted, however, that "[f]ederal law in this circuit does not set forth specific guidelines;" and, so, it turned to Georgia law because those state law standards were found to be "wholly consistent with federal spoliation principles." *Id.*

Although the Eleventh Circuit has not expressly found Florida law to be wholly consistent with federal spoliation principles, lower federal courts have routinely looked to Florida law for guidance on when to impose sanctions for spoliation. *FTC v. Nationwide Connections*, No. 06-80180-CIV, 2007 WL 4482607, at *1 (S.D. Fla. Dec. 19, 2007). Under Florida law, to establish spoliation, the moving party has the burden of proving "(1) the missing evidence existed at one time; (2) the non-moving party had a duty to preserve the evidence; and (3) the evidence was crucial to the movant being able to prove its *prima facie* case or defense." *Sharp v. City of Palatka*, No. 3:06-cv-200-J-TEM, 2008 WL 89762, at *1 (M.D. Fla. Jan. 7, 2008).

In addition, the sanction of dismissal or the imposition of an adverse inference is warranted only where the spoliator acted in bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *Cox v. Target Corp.*, 351 Fed. Appx. 381, 383-84 (11th Cir. 2009) (jury instruction on spoliation of evidence required only when the absence of that evidence is predicated on bad faith, *citing Bashir v. Amtrak*, 119 F.3d 929 (11th Cir. 1997); *BP Prods. North America, Inc. v. Southeast Energy Group, Inc.*, 282 Fed. Appx. 776, 780 n.3 (11th Cir. 2008) (holding that an adverse inference presumption was appropriate where the district court implicitly determined that the defendant's actions were predicated on bad faith); *United States v. Barlow*, 576 F. Supp. 2d 1375, 1381 (S.D. Fla. 2008) ("Sanctions for spoliation are appropriate 'only when the absence of that evidence is predicated on bad fath,'"quoting *Sharp v. City of Palatka*, 06-cv-200-J-TEM,

6

2008 WL 89762, at *1 (M.D. Fla. Jan. 7, 2008) and *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)); *Williams v. Wal-Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1321-22 (M.D. Ala. 2008); *Wilson v. Wal-Mart Stores, Inc.*, No. 5:07CV394-OC-10GRJ, 2008 WL 4642596, at *2 (M.D. Fla. Oct. 17, 2008) ("[A]n adverse inference or presumption instruction is available as a sanction for spoliation of evidence only where the Court finds that the spoliator acted in bad faith."). *But see Brown v. Chertoff*, 563 F.Supp. 2d 1372, 1381 (S.D. Ga. 2008) ("[S]ince *Flury*, bad faith is only one factor to consider").

It is also well-settled that "mere negligence" in losing or destroying the records is not sufficient to support a finding of bad faith that warrants either dismissal or an adverse inference, since 'it does not sustain an inference of consciousness of a weak case.'" *Bashir v. Amtrak*, 199 F.3d 929, 931 (11th Cir. 1997) (citing *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975)); *Slattery v. Precision Response Corp.*, 167 Fed. Appx. 139, 141 (11th Cir. 2006).

Dismissal is obviously the most serious sanction, and thus, the Eleventh Circuit in *Flury* provided the following guidance for making this determination:

> In determining whether dismissal is warranted, the court must consider (1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the plaintiff acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded. As sanctions for spoliation, courts may impose the following: (1) dismissal of the case; (2) exclusion of expert testimony; or (3) a jury instruction on spoliation of evidence which raises a presumption against the spoliator.

*Id.* (citing *Chapman v. Auto Owners Ins. Co.*, 469 S.E.2d 783, 784 (Ga. Ct. App. 1996)).

Finally, as summarized by the Court in *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010), *citing Calixto v. Watson Bowman Acme*

*Corp.*, No. 07-60077-CIV, 2009 WL 3823390, at *16 (S.D. Fla. Nov. 16, 2009), in the absence of direct evidence of bad faith, the determination of bad faith may be based on circumstantial evidence, where the following factors are present:

> (1) evidence once existed that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case; (2) the spoliating party engaged in an affirmative act causing the evidence to be lost; (3) the spoliating party did so while it knew or should have known of its duty to preserve the evidence; and (4) the affirmative act causing the loss cannot be credibly explained as not involving bad faith by the reason proffered by the spoliator.

### IV.     Findings of Fact and Analysis

At the outset, the undersigned reiterates that the burden of proof of spoliation rests upon the Defendant, Northwestern. In addition, despite the invitation to present live testimony at an evidentiary hearing, which would enable the Court to judge the credibility of the witnesses and the proffered explanations, neither party sought to do so. Therefore, the Court must determine credibility based upon the cold record.

Based upon the review of the record as a whole, the undersigned finds as follows.

#### A. Scope of the Document Destruction

At the outset, it is necessary to clarify the scope of the document destruction that occurred in this case. The undersigned credits Dr. Socas' assertion that she had an existing business practice to discard inactive patient files after four years, in accordance with Florida law. Nevertheless, Dr. Socas failed to suspend her policy of destroying inactive patient files after she was aware of their relevance to this case. These files contained the only contemporaneous record of the procedures she performed on those patients, before and after the accident which caused her alleged disability.

In so finding, the undersigned rejects Northwestern's argument that Dr. Socas did

not destroy any documents until *after* she became aware that they were relevant to her insurance claim.  In support of Northwestern's unavailing argument that Dr. Socas only began purging inactive patient files after she became aware of their relevance to her claim for insurance benefits, Northwestern relies on a letter Dr. Socas wrote to Northwestern in September 2005, during Northwestern's consideration of Dr. Socas' disability claim, stating that it would be too onerous to provide a monthly cumulative total of the procedures she had performed because it would require her to "manually go through 10.5 years of charts and create tallies from that."  Based on Dr. Socas' failure to mention that any tallies would not include information contained within inactive patient files that she had purged over the years, Northwestern concludes that complete records had existed at that time and that Dr. Socas subsequently destroyed them.[3]

The undersigned finds that Northwestern's interpretation of this letter is inaccurate.[4]  Using ordinary parlance, Dr. Socas conveyed that it would be onerous for her to scour all of her *existing* files to create lists of the all the procedures she

---

[3] In connection with her argument that Northwestern was not prejudiced by her destruction of inactive patient files, Dr. Socas points to the fact that she retained approximately 85 patient files that were created prior to 1995, because those patients remained "active" patients.  Northwestern contends that the fact that Dr. Socas was able to quickly compile this list of active patient files bolsters its argument that Dr. Socas had a *complete* archive of all patient files as of September 10, 2005, because the speed with which she was able to compile this list contrasts with her claim, in the September 10, 2005 letter, that it would be "onerous" to review all of her patient files to create monthly tallies of the procedures she performed.  This argument is not persuasive because, while it may not have been onerous to create a simple list of patient files that were created prior to 1995, it would likely have been onerous to scour each of those files (some of which were created as early as 1989) in order to create a tally of each individual dental procedure reflected therein, together with the date that it was performed, a description of the procedure, the charges associated with the procedure and the relevant ADA codes.

[4] Dr. Socas testified that she had not obtained counsel at this time and drafted this letter on her own (DE # 89, Ex. F2 at 22).

9

performed over a ten year period. There is no basis from which to infer that Dr. Socas also sought to convey the impression that she had maintained each and every patient record during that time, notwithstanding the fact that she was permitted, under Florida law, to discard inactive patient files. The most reasonable interpretation of Dr. Socas' letter is that it refers to the fact that some patients had files that dated back to 1995 (because those patients remained active patients by making return visits), even if it was also true that other patients' files had become inactive and were discarded four years after the last visit. Nothing in Dr. Socas' letter says, or even suggests, otherwise.

### B. Bad Faith vs. Negligence

Based upon the particular facts in this case, the undersigned concludes that Dr. Socas acted negligently in failing to suspend her ordinary policy of purging inactive patient files after she became aware, in August 2005, that the information contained in those files was relevant to her disability claim.

At the outset, there is no evidence that Dr. Socas was aware, or should reasonably have been aware, of the need to preserve inactive patient files before August 2005, when Northwestern, evaluating Dr. Socas' disability claim, requested information regarding her ability to perform certain procedures that could only be gleaned by reviewing her patient files.[5] However, at the hearing, Dr. Socas argued that she was unaware of the relevance of the records in August 2005, and that she believed that Northwestern had abandoned their request for the records after the correspondence of August and September 2005. The undersigned finds that Defendant has failed to

---

[5] The undersigned notes that even if Dr. Socas was not aware of the import of these records, she should have been; and, therefore, the undersigned considers Dr. Socas to be constructively aware of the consequence of destroying her patient files.

establish that this interpretation was unreasonable; although Dr. Socas acted negligently in failing to make further inquiry in this regard. *See E.E.O.C. v. H.S. Camp & Sons, Inc.*, 542 F. Supp. 411, 444-45 (M.D. Fla. 1982) (refusing to draw an adverse inference in employment discrimination case based on defendant's failure to preserve application forms where "there was considerable doubt whether [the defendant] was actually aware at the time that the application forms were destroyed that it was required to preserve all application forms"").

      When Dr. Socas hired counsel in April 2006, she certainly should have been aware of the possibility of litigation and she should reasonably have anticipated the need to preserve records. However, it was not until June 26, 2008, that Defendant Northwestern made a formal discovery request seeking the patient files. At that point, there was a clear duty to preserve records, and in fact Dr. Socas closed her office to permit Defendant to review her patient files. In the interim, however, it is clear that patient files were destroyed, and that those files contained information regarding the procedures performed on patients after the 1995 injury.

      There is no evidence of a deliberate attempt by Plaintiff to deprive Defendant of the opportunity to review her records at any time Defendant chose to do so. Indeed, there is nothing to suggest that Plaintiff would not have permitted Defendant to inspect the records at any time during its investigation of Plaintiff's claim; her only objection was to the request that she perform a manual tally of records, and she offered a compromise by providing all of her financial records. Moreover, there is no evidence in this record that Plaintiff had any litigation experience or was ever advised by anyone to retain her records.

      Thus the undersigned finds that Plaintiff acted negligently in not preserving her

patient files, but that she did not act in bad faith.

### C. Prejudice

The undersigned finds that as a result of this continued destruction of inactive patient files, Northwestern was prejudiced because without the contemporaneous records of those procedures in Dr. Socas' patient files – an indeterminate number of which were destroyed while they were within Dr. Socas' exclusive control – its ability to rebut Dr. Socas' own testimony about the procedures she is able to perform has been limited.

Dr. Socas' ability to perform these procedures constitutes the central inquiry in this case, and the content of the patient files constitute the only contemporaneous record of the procedures Dr. Socas performed during the relevant time. An examination of these files is certainly relevant to the issues present in this case, and would have given Defendant the opportunity to verify the assertions made by Plaintiff concerning her incapacity. The undersigned recognizes, however, that certain persons who were patients of Dr. Socas prior to the accident continued to visit her, and thus there is at least some evidence of the nature of her practice and whether it changed. Moreover, at the time of the initial request by Northwestern, over 10 years had passed since the date of the accident, and it is unclear how many patient files reflecting activities that pre-dated the accident were then in existence. *See Brown v. Chertoff*, 563 F. Supp. 2d 1372, 1378 (S.D. Ga. 2008) ("Given the relevance of [the missing] notes, some prejudice must follow from their destruction."); *St. Cyr v. Flying J Inc.*, 2007 WL 1716365, at *5 (the defendant was prejudiced when the plaintiffs, without notice to the defendant, destroyed the vehicle which was the subject of the lawsuit and denied the defendant an opportunity to use more reliable means of proving or disproving the plaintiffs' theories

of fault).

### D. Ability to Cure the Prejudice

Moreover, this prejudice cannot be completely cured by other means. Dr. Socas argues that she was forced to refer some of her patients to other dentists when they required procedures that she could no longer perform, and suggests that Northwestern could depose these dentists.[6] While it is true that these dentists' testimony might provide circumstantial support for *Dr. Socas'* claim that she was referring procedures that she could no longer perform, this does not address *Northwestern's* inability to obtain objective evidence relevant to its defense that Dr. Socas continued to be able to perform some of these procedures, even if she did refer some cases to other dentists. Northwestern's defense merely requires it to establish that Dr. Socas was *able* to perform the procedures in question, and whether she performed fewer of them during the relevant period does not paint a full picture of the issues to be resolved at trial. Thus, there is some quantity of secondary evidence which can mitigate the prejudice to Northwestern, but this indirect and somewhat stale testimony is not a complete substitute for the contemporaneous records evidencing the extent of Dr. Socas' injuries and the limitations they posed to her ability to work.

### E. Significance

From a practical standpoint, the importance of the evidence is fairly significant. Although Dr. Socas is keen to point out that 85 patient files dating back to at least 1995 have been retained because those patients did not go more than four years between

---

[6] Indeed, at the October 15, 2009 hearing, Dr. Socas reiterated that Northwestern had not tried to depose these dentists. Northwestern responded that it should not be forced to rely on the memory of these dentists.

visits, Dr. Socas has failed to explain the quantity of records that have been destroyed, or their content, even though she the only party in a position to do so.[7]  Dr. Socas' explanation that the missing evidence is immaterial is wrong on two scores.

First, Dr. Socas is wrong to focus solely on the 2001-2002 period, which Northwestern defines as a "period of special interest" because it was at this time that Dr. Socas expanded her office space even though her injuries purportedly rendered her unable to perform the duties of her profession.  The missing patient files could contain evidence from any period, because the date that they were destroyed is only keyed to the date of the patient's *last visit*, not the dates that they first received service.  Thus, it is possible that a patient first visited Dr. Socas in 1994, made periodic visits until 2001, and then did not make any further appointments.  Although in this scenario, the patient's file would have been destroyed in 2005, it would result in the destruction of records dating back to 1994.

Second, Dr. Socas' explanation that she was able to expand her office space because of a fortuitous deal to purchase much more space for a slightly higher rent does not substantially reduce the importance of direct evidence of the effects of her alleged disability.  The fact remains that beginning in 2005, Dr. Socas destroyed the only objective evidence of her ability to perform the duties of her profession which is the central issue in this case and, consequently, deprived Northwestern of its only opportunity to challenge her recollections of the procedures that she was no longer able to perform.

---

[7] At the October 15, 2009 hearing, Northwestern explained that it had been prejudiced, in part, because there was no evidence that the 85 files predating 2005 were representative of Dr. Socas' practice.  There is also no evidence that it is not representative of her practice.

F.  <u>The Appropriate Sanction</u>

Based on the analysis set forth above, the undersigned concludes that Dr. Socas spoliated relevant evidence by failing to suspend her ordinary policy of destroying inactive patient files which contained an objective contemporaneous record of procedures that she performed during the relevant period.

The undersigned notes, however, that Dr. Socas' culpability is somewhat reduced based on the fact that the destruction resulted from the failure to suspend her longstanding office policy of purging inactive patient files, rather than from a new destruction policy or a deliberate attempt to eliminate evidence.  In addition, the extent of the improper conduct is somewhat limited, because (1) Dr. Socas did not have a duty to retain inactive patient files until August 2005 at the very earliest, and the undersigned finds that she was not specifically made aware of the need to retain these files until the discovery request in 2008; and (2) she did not depart from her regular policy of complying with Florida law discarding only *inactive* patient files, resulting in her production of 85 active patient files that predate the 1995 accident.  *See Jandreau v. Nicholson*, 492 F.3d 1372, 1375 (Fed. Cir. 2007) (burden is on the non-spoliating party to show the existence of each criterion, including the spoliator's culpability and the relevance of the spoliated evidence).

Thus, the undersigned concludes that the actions of Dr. Socas were negligent, but do not constitute bad faith, and thus the particular sanctions Northwestern seeks – namely, a dismissal of Dr. Socas' claims; or, in the alternative, an adverse inference instruction on the issue of whether Dr. Socas is able to perform the principal duties of her occupation – are excessive.  *See St. Cyr v. Flying J Inc.*, 2007 WL 1716365, at *5-6 (the court found that dismissal was not warranted because the bad faith evidenced by

the plaintiffs' conduct was not flagrant, and because the plaintiffs did not act in callous disregard).

However, this ruling is not intended to preclude Defendant Northwestern from introducing into evidence the facts concerning this failure to preserve relevant documents.  See *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-60351-CIV, 2010 WL 3368654, at *13 (S.D. Fla. Aug. 23, 2010); *Floeter v. City of Orlando*, No. 6:05-cv-400-Orl-22KRS, 2007 WL 486633, at *7 (M.D. Fla. Feb. 9, 2007).  In addition, it may be appropriate to give an instruction similar to the one implicitly approved by the Eleventh Circuit in *Martinez v. Brink's, Inc.*, 171 Fed. Appx. 263 (11th Cir. 2006), which is contained in the underlying court file, Case No. 01-8393-CIV, DE # 255 (S.D. Fla. 2003):

> You have heard testimony about evidence which has not been produced.  Counsel for Plaintiff has argued that this evidence was in Defendant's control and would have proven facts material to the matter in controversy.
>
> If you find that the Defendant could have produced the evidence, and that the evidence was within its control, and that this disputed evidence would have been material in deciding among the facts in dispute in this case, and that the Defendant acted in bad faith in not producing the evidence, then you are permitted but not required, to infer that the evidence would have been unfavorable to the Defendant.
>
> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you.  You may also consider whether the defendant had a reason for not producing this evidence, which was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case.

It is not necessary to decide at the present time whether such an instruction, or a different instruction, if any, should be given; or, if counsel should merely be permitted to argue this matter to the jury.  This issue may be raised prior to trial, following

disposition of the presently pending Motion for Summary Judgment.

Therefore, based upon a review of the record as a whole, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Sanctions (DE # 89), is

**DENIED**, to the extent stated in the body of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida on September 30, 2010.

_____
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to all counsel of record**