UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-20336-CIV-SIMONTON
<u>CONSENT CASE</u>

SUSAN F. SOCAS,

      **Plaintiff,**

**v.**

THE NORTHWESTERN MUTUAL
LIFE INSURANCE COMPANY,

      **Defendant.**

_____/

### <u>ORDER GRANTING DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT</u>

Presently pending before the Court is Defendant's Motion for Final Summary Judgment (DE # 107). This case is referred to the undersigned Magistrate Judge based upon the consent of the parties (DE # 13). This motion is fully briefed (DE ## 123, 132). On November 4, 2010, the undersigned heard oral argument on the motion. Based upon a careful review of the record, after considering the arguments of counsel, and for the reasons stated herein, Defendant's Motion for Final Summary Judgment is granted.

    I. <u>Background</u>

According to the Complaint, Plaintiff, Susan Socas, is a dentist who purchased five disability insurance policies from Defendant, The Northwestern Mutual Life Insurance Company (hereafter "Northwestern"). On September 6, 1995, Dr. Socas was involved in a car accident which, she alleges, rendered her totally disabled. In 2005, Dr. Socas filed a claim for benefits, which Northwestern denied that same year. Subsequently, on February 8, 2007, Dr. Socas filed this lawsuit, claiming that Northwestern had breached the relevant disability insurance contracts (DE # 1).

On March 12, 2007, Northwestern filed its Answer (DE # 3).

This motion followed.[1]

**II.  The Parties' Positions**

**A.  Northwestern's Position**

Northwestern makes three primary arguments.  Initially, Northwestern contends that it is entitled to summary judgment because Dr. Socas cannot establish total disability, as defined in her insurance policies, as she can and does perform some or most of the  principal duties of her occupation as a general dentist (DE # 107 at 1-2, 8-15; DE # 132 at 3, 4-10).  Next, Northwestern argues that it is entitled to summary judgment because 1) Dr. Socas filed her claim late, ten years after the alleged onset of disability; 2) Dr. Socas has no legally cognizable excuse for her untimeliness and 3) Northwestern has been prejudiced by the delay (DE # 107 at 2, 15-18; DE # 132 at 2, 10-12).  Northwestern also submits that Dr. Socas' claim is barred by her failure to provide Northwestern with written proof of her disability within 90 days after the end of each monthly period for which benefits are claimed, or with respect to three of the five policies at issue, no later than one year after the end of each monthly period for which benefits are claimed (DE # 107 at 2, 18-19; DE # 132 at 1-2).  Northwestern further claims that Dr. Socas' claim to monthly disability periods prior to November 2001 is barred by the five-year limitations period incorporated into the policies (DE # 107 at 2; 19-20).

---

[1] On January 21, 2009 and March 9, 2009, the undersigned granted the parties' joint motions to extend all deadlines indefinitely while the parties explored the possibility of settlement (DE ## 101, 129).  On August 27, 2009, the undersigned entered an Order abating the case and denying all pending motions without prejudice based on the parties' failure to comply with the Court's March 9, 2009 Order, and informing the parties that they could restore the case to active status by filing a motion requesting same (DE # 137). On September 2, 2009, the parties filed a joint motion to reactivate the case and reactivate certain motions (DE # 138).  On October 1, 2009, the undersigned granted the motion (DE # 144).

Finally, Northwestern argues that Dr. Socas did not receive care for her disability from a licensed physician between October 1996 and August 2005, and that benefits under the policies are only available if the insured is under the care of a licensed physician during the time of her disability (DE # 107 at 3; 20-22; DE # 132 at 2-3; 12-13).

    **B.  Dr. Socas' Position**

    Initially, Dr. Socas contends that she is totally disabled because she can no longer perform all the principal duties of her occupation viewed at the time she was injured and because the insurance policies at issue do not unambiguously define the term "principal," and, so, should be interpreted against Northwestern (DE # 123 at 6-15). Next, Dr. Socas contends that Defendant has unclean hands, because at the time of Dr. Socas' attempt to file a claim in 1995, immediately after the accident, Northwestern's then-agent, Oscar Pina, wrongly told Dr. Socas that she had no claim under the policies (DE # 123 at 16-18). Dr. Socas further raises equitable estoppel as a bar against Northwestern's statute of limitation defense, contending that Pina misled or lulled Dr. Socas into inaction, and that Northwestern should not be allowed to benefit from the wrongdoing of its agent (DE # 123 at 18). Dr. Socas also submits that equity prefers not to enforce the breach of contractual provisions which result in extreme forfeiture (DE # 123 at 18-19). Dr. Socas finally contends that she received appropriate treatment for her condition, i.e., acupuncture treatment and massage therapy. Dr. Socas also states that she reached maximum medical improvement in October 1996, and that the Florida courts will not require the enforcement of a "care and attendance" clause if continued treatment would be useless (DE # 123 at 19-20).

    **III.  Standard for Summary Judgment**

    Rule 56 of the Federal Rules of Civil Procedure authorizes entry of summary

judgment where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). The movant has satisfied its burden of proof if, "after adequate time for discovery," the non-movant has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is an integral part of the federal rules as a whole, which are designed to secure a just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, *supra*. When the motion is filed by a defendant and addresses the adequacy of plaintiff's causes of action, the defendant's "burden is not to produce evidence negating the existence of material facts; rather, the burden is to 'point out the absence of evidence supporting the nonmoving party's case.'" *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1274 (S.D. Fla. 2003) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)); *see also Hickson Corp. v. N. Crossarrm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Assuming the moving defendant has met its initial burden, the non-moving plaintiff may not rely merely on allegations or denials in its own pleading; rather, its response must support its assertion "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or . . . by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party

4

cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  A party can object to the use of the material cited on the ground that it "cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.  There must be a *genuine* factual dispute sufficient to permit a *reasonable* jury to return a verdict for the non-movant; and, "[f]or factual issues to be considered genuine, they must have a real basis in the record."  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).  "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).  While the Court must view all of the evidence and any inferences arising therefrom in light most favorable to the non-movant, it is nevertheless insufficient for the non-movant "to state what the evidence at trial will demonstrate" without producing actual "evidence to refute the factual claims contained in the motion for summary judgment."  *Schvaneveldt v. Mastec N. Am., Inc.*, 306 F. Supp. 2d 1177, 1181 (S.D. Fla. 2004) (citing *Hairston*, 9 F.3d at 918).  Nor is the Court "required to 'scour the record to determine whether there exists a genuine issue of material fact to preclude summary judgment.'"  *Cardinal Capital*, 401 F. Supp. 2d at 1282 n.5, quoting *L.S. Heath & Son, Inc. v. AT&T Info. Sys. Inc.*, 9 F.3d 561, 567 (7th Cir. 1993).

IV.     Interpreting Insurance Contracts

The jurisdiction of this Court is based upon diversity of citizenship of the parties, and therefore this Court applies the principles of contract interpretation under Florida law.  *See Payne v. U.S. Fidelity and Guar. Co.*, 625 F. Supp. 1189 (S.D. Fla. 1985).

Florida law states that contracts are to be interpreted as a whole, and should not turn on an insulated examination of particular phrases or paragraphs. *See Jones v. Warmack*, 967 So. 2d 400, 402 (Fla. Dist. Ct. App. 2007); *Specialized Machinery Transport, Inc. v. Westphal*, 872 So. 2d 424 (Fla. Dist. Ct. App. 2004); *see also General Star Indem. Co. v. W. Fla. Village Inn, Inc.*, 874 So. 2d 26, 30 (Fla. Dist. Ct. App. 2004) ("[A] single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders."). Further, courts should strive to "give effect to each provision" of a contract, meaning that "the court should select" an interpretation that honors the entire contract "over an alternative interpretation that relies on negation of some of the contractual provisions." *Inter-Active Servs, Inc. v. Heathrow Master Ass'n, Inc.*, 721 So. 2d 433, 435 (Fla. Dist. Ct. App. 1998). Conversely, a court is not at liberty to rewrite or add terms to a written agreement. *See Corwin v. Cristal Mizner's Preserve Ltd. Partnership*, 812 So. 2d 534 (Fla. Dist. Ct. App. 2002). In sum, "contracts should receive a construction that is reasonable, practicable, sensible, and just." *7-Eleven, Inc. v. Stin, LLC*, 961 So. 2d 977, 981 (Fla. Dist. Ct. App. 2007).

It is within the province of the Court to determine, as a matter of law, whether a contract is ambiguous. *See Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So. 2d 745, 749 (Fla. Dist. Ct. App. 2007). A complex contract is not necessarily an ambiguous one. *See City of Delray Beach, Fla. v. Agriculture Ins. Co.*, 85 F.3d 1527, 1531 (11th Cir. 1996). An ambiguity exists in a contract only where "it is reasonably susceptible to more than one interpretation. However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Lambert v. Berkley S. Condominium Ass'n, Inc.*, 680 So. 2d 588, 590 (Fla. Dist. Ct. App. 1996). In other words,

6

"[t]he fact that both sides ascribe different meanings to the language does not mean the language is ambiguous."  *Kipp v. Kipp*, 844 So. 2d 691, 693 (Fla. Dist. Ct. App. 2003).

An unambiguous insurance contract must be "construed in accordance with 'the plain language of the polic[y]," *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000), and presents no question of fact for a jury.  *See Bragg v. Bill Herd Chevrolet, Inc.*, 374 F.3d 1060 (11th Cir. 2004).  Absent an ambiguity, the words in a contract must be construed according to their "plain and ordinary meaning."  *Abel Homes at Naranja Villas, LLC v. Hernandez*, 960 So. 2d 891, 894 (Fla. Dist. Ct. App. 2007).  Moreover, in the context of an insurance contract, the court is obligated to resolve any ambiguity against the insurer that drafted the contract, and in favor of the insured.  *Allstate Ins. Co. v. Swain*, 921 So. 2d 717, 719 (Fla. Dist. Ct. App. 2006).  However, the presumption against the insurer that drafted the policy is only applied where the policy is subject to "a genuine inconsistency, uncertainty, or ambiguity [that] remains after resort to the ordinary rules of construction."  *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1138 (Fla. 1998).

V.  Statement of Undisputed Material Facts

1.  Northwestern issued Dr. Socas the following five disability policies: Policy No. D682255, issued June 26, 1989; Policy No. D701901, issued September 26, 1989; Policy No. D749126, issued May 8, 1990; Policy No. D776594, issued September 17, 1990 and Policy No. D821773, issued May 10, 1991 (DE # 1 at paras. 2, 7).

2.  The polices define "total disability", in pertinent part, as follows, "the insured is totally disabled when he is unable to perform the principal duties of his occupation" (DE # 1 at paras. 13-16).

3.  The polices define "partial disability," in pertinent part, as follows,

7

The insured is partially disabled when: a. he is unable to perform one or more of the principal duties of his occupation or to spend as much time at his occupation as he did before the disability started; and b. he has at least a 20% Loss of Earned Income.

(DE # 1 at paras. 13-16).

4.  The policies define "occupation", in pertinent part, as "the occupation of the Insured at the time he becomes disabled" (Ex. A to DE # 1 at 12).

5.  Sections 4.1 and 4.3 of the policies provide:

Written notice of claim must be given to the Company within 60 days after the start of any loss covered by this policy.  If the notice cannot be given within 60 days, it must be given as soon as reasonably possible.  The notice should:

> give the Insured's name and policy number and be sent to the Home Office or be given to an authorized agent of the Company.  The Home Office is located at:
> 720 East Wisconsin Avenue
> Milwaukee, Wisconsin 53202

Written proof of disability must be given to the Company within 90 days after the end of each monthly period for which benefits are claimed.  If the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible. [In any event, the proof required must be given no later than one year after the end of each monthly period for which benefits are claimed unless the Owner was legally incapacitated.]

(Exs. A & E to DE # 1; Secs. 4.1, 4.3, at 15, 49 of 70.  The portion in brackets is included in Policies No. D749126, issued May 8, 1990; D776594, issued September 17, 1990 and D821773, issued May 10, 1991).

6.  Section 4.7 of the policies provides, in pertinent part, "[n]o legal action may be brought after the applicable statute of limitations has run from the time written proof is required to be given" (Exs. A & E, Sec. 4.7, at 15, 49).

7.  Section 1.1 of the policies provides, in pertinent part, "[b]enefits are provided for the Insured's total or partial disability only if . . . the Insured is under the care of a licensed physician other that himself during the time he is disabled" (Exs. A & E, Sec.

8

1.1, at 12, 46).

8.  The traffic accident which caused the injuries upon which Plaintiff's claim for disability benefits is based, occurred on September 6, 1995 (DE # 102-3 at 1-7).

9.  Plaintiff's claimed disability began on September 7, 1995 (DE # 123-4 at 2).

10.  Plaintiff first provided Northwestern with written notice of her claim on August 1, 2005 (DE # 123-4 at 7).

11.  Plaintiff first provided Northwestern with written proof of her claimed disability on or after August 24, 2005 (DE # 106 at 3-7).

12.  Prior to her claimed disability, Plaintiff was a dentist-general practitioner (DE # 123-4 at 1; DE # 1 at para. 3, Exs. A & B to DE # 1 at 20, 52).

13.  Prior to her claimed disability, Plaintiff engaged in the full-time practice of general dentistry.  Forty to fifty percent of her practice involved advanced dental procedures and surgeries, including oral surgery; both surgical and non-surgical periodontics; and both surgical and non-surgical endodontics (DE # 123-4 at 12).

14.  Subsequent to her claimed disability, Plaintiff has worked as a general dentist an average of 21 hours per week, with approximately 97% of her practice concentrated on general non-surgical dentistry, and the remaining approximately 3% spent performing other procedures, including simple oral surgeries, crowns and bridges, endodontics and periodontics (DE # 123-4 at 2-3; 123-10 at 125-37).

15.  Also subsequent to her claimed disability, and due to her physical limitations, since July 1, 1996, Plaintiff has worked part-time as a Clinical Associate Professor at the University of Florida Hialeah Dental Clinic, where she has taught every Monday and Friday (DE # 123-6 at 19, 29).

16.  Between October 21, 1996, and August 24, 2005, Plaintiff did not visit any

licensed physicians for the treatment of her alleged disabling condition (DE # 123-4 at 5; DE # 106 at 3-4; DE # 106 at 5-7).  During this period Dr. Socas received treatment from a chiropractor, Dr. Kim Rogner, an acupuncturist, Barbara Barrocas; and two massage therapists, Illeana Hernando and Sandy Martinez (DE ## 123-7, 123-8, 123-9).

17.  In a letter dated April 26, 2006, Northwestern informed Dr. Socas, in part, that it found that she had been totally disabled from October 7, 1995 through October 12, 1995, and partially disabled from October 12, 1995 through April 15, 1996, the date as of which Northwestern believed that Dr. Socas would have been able to resume full work activity had she chosen to do so (DE # 123-40 at 1).[2]

18.  Plaintiff was not legally incapacitated during any time relevant to this action.

VI.  <u>Analysis</u>

The undersigned concludes that Northwestern is entitled to summary judgment on all the issues raised in its Motion.  Viewing the evidence in the light most favorable to her, there is insufficient evidence in the record to prove that Dr. Socas is totally disabled. This alone is sufficient to grant summary judgment for Northwestern.  However, Dr. Socas has also failed to comply with the policies' notice of claim provisions, and has also failed to comply with the polices' proof of disabilities provisions.   Furthermore, Dr. Socas' action for breach of contract is time-barred by the appropriate statute of limitations.  Finally, Dr. Socas failed to comply with the care and attendance clauses of the policies, as she was not under the care of a physician for the period between October 1996 and August 2005.

---

[2] The letter also stated that Northwestern had not finished evaluating Dr. Socas' total disability claim from September 13, 2005 to the present (DE # 123-40 at 2).

A.  **Dr. Socas is Not Totally Disabled**

As discussed below, the parties dispute the applicable standard to be used to determine "total disability" within the meaning of the applicable insurance policies. However, under either standard of law proffered by the parties, the undersigned finds that there is no genuine material issue of fact, and Dr. Socas was not totally disabled during the period from January 1996 to the present.[3]  Dr. Socas was a general dentist both before and after the automobile accident.  After the accident, she was able to perform some, but not all of her previous duties as a general dentist.  Therefore, under either standard, after January 1, 1996, she was not totally disabled as a general dentist.

The general positions of the parties are as follows.  Dr. Socas urges the Court to apply cases which conclude that the definition of "Total Disability" is ambiguous, and that an insured can be totally disabled despite being able to perform one or more substantial and material duties of his occupation.  *See Giddens v. The Equitable Life Assurance Soc'y of the United States,* 445 F.3d 1286, 1297 (11th Cir. 2006) (holding that, under Georgia law, the insured was totally disabled based upon inability to perform "most or the majority" of his substantial and material duties, where the policy defined "total disability" as the inability to perform "the substantial and material duties of your regular occupation" ); *accord Dowdle v. Nat. Life Ins. Co.,* 407 F.3d 967 (8th Cir. 2005) (policy defining total disability as inability "to perform the material and substantial duties of an occupation" and concluding that ambiguity existed because "[t]he policies'

_____

[3] At the November 4, 2010, oral argument on the motion, Defendant's counsel stated that he was not arguing that Defendant was entitled to summary judgment on the issue of whether Dr. Socas was totally disabled from October 13, 1995, the date that benefits would have started, to January 1, 1996, because Dr. Socas did not attempt to resume her practice until January 1, 1996.

definitions of 'total disability' are susceptible to differing interpretations, because the policies do not speak in terms of 'any,' 'all,' 'some,' or 'the most important part' of [the insured's] duties").  Dr. Socas argues that in order to be totally disabled she need not prove that she is unable to perform *all* of the duties of her occupation, but only the substantial and material duties necessary to be reasonably expected to carry on that occupation, and that the definition of total disability in the Policies is ambiguous.

Northwestern first asks this Court to follow the line of cases holding that in order to recover total disability benefits, an insured is "obligated to show that his disability prevented him from performing all of those duties, not just some of them."  *McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586, 588 (8th Cir.  2002) (finding this construction to be "the only one that comports with both reason and authority").  *See Karlin v. Paul Revere Life Ins. Co.,* 2010 WL 3825493 at *7-8 (D. Kan. Sept. 24, 2010)*; Berenguer v. Lincoln Nat'l Life Ins. Co.*, 2006 WL 3327643 at *14-16 (E.D. Va. Nov. 15, 2006)*; Conway v. Paul Revere Life Ins. Co.,* 2002 WL 31770489, at *9 (W.D.N.C. 2002), *aff'd,* 70 Fed. Appx. 117 (4th Cir. 2003); *Yahiro v. N.W. Mut. Life Ins. Co.,* 168 F. Supp. 2d 511 (D. Md. 2001); *Dym v. Provident Life & Accident  Ins. Co.,* 19 F. Supp. 2d 1147 (S.D. Cal. 1998); *Giustra v. Unum Life Co. of Am.,* 815 A.2d 811, 814 (Me. 2003); *see also Potter v. Liberty Life Ins. Co. of Boston,* 132 Fed. Appx 253, 257 (11th Cir. 2005); *Repass v. Northwestern Mut. Life Ins. Co.*, 684 F. Supp. 2d 779, 779-85 (S.D. W. Va. 2009).  In the alternative, Northwestern argues that Dr. Socas' ability to perform most or the vast majority of her substantial and material duties and her ability to engage in her regular occupation as a general dentist necessarily means that she is not totally disabled from her regular occupation, thus, is not totally disabled as the Policies define the term.

The undersigned finds the argument of Northwestern persuasive since, as

explained by the Courts in *McOsker* and *Karlin*, the interpretation urged by Socas renders the "partial disability" definition superfluous; whereas the interpretation advanced by Northwestern gives effect to all provisions of the policy.  However, in this case as in *Repass*, this Court is not required to choose among the different approaches because even assuming that the policy is ambiguous and that the more favorable *Giddens* standard applies, Dr. Socas still cannot show she was totally disabled under the terms of the Policies.  In *Giddens*, the Eleventh Circuit made it clear that because Giddens was unable to perform most or the majority of his material duties, and, thus, could not engage in his regular real estate occupation, Giddens was totally disabled. 445 F.3d at 1289, 1301.  Here, as detailed below, the undisputed facts establish that Dr. Socas can perform most or the majority of her duties as a general dentist.  Therefore, viewing the facts in the light most favorable to Dr. Socas, and assuming that the insurance contract is ambiguous and construing its terms in the light most favorable to Dr. Socas, she does not meet the requirements for total disability.[4]

In this regard, the undersigned finds persuasive the reasoning in *Hershman v. Unumprovident Corp.*, 660 F. Supp. 2d 527 (S.D.N.Y.  2009), which concerned an insurance policy with definitions of "total disability" and "partial disability" similar to the definitions found in the policies applicable to Dr. Socas.  In *Hershman*, the plaintiff practiced invasive cardiology at a hospital, where the plaintiff performed, on average, about 1,000 cardiac procedures a year.  The plaintiff also practiced cardiology from

---

[4]  This ruling is consistent with the definition of "partial disability," which applies where the insured "is unable to perform one or more of the principal duties of his occupation or to spend as much time at his occupation as he did before the disability started."  Dr. Socas has not sought partial disability benefits because she does not meet the additional requirement that requires a 20% loss of earned income.

private medical offices, where he performed the patient consultations, examinations, analyses and other non-operating duties, which the plaintiff stated comprised a substantial portion of his practice.  660 F. Supp. 2d at 528.  The plaintiff purchased an occupational insurance policy which insured him against the possibility that a "total disability" or "residual disability" would prevent or impede performance of his "occupation."   The policy defined total disability as the plaintiff's inability to perform the important duties of his occupation.  The policy defined partial disability as the plaintiff's inability to perform one or more of the principal duties of his occupation, combined with a 20% or more earnings decline.  *Id.* at 529.  In late 2003, the plaintiff began to feel severe pain in his lower back, and numbness down his left leg, conditions likely caused by the heavy lead apron which physicians must wear in the catheterization lab.  Due to the pain, the plaintiff had to frequently rest in the middle of invasive procedures.  In January 2004, the plaintiff decided that his symptoms were interfering with his clinical judgment and that it was no longer safe for him to conduct invasive procedures, so he restricted his practice to the examination of patients in his office.  *Id.* at 529-30.

After the plaintiff filed his claim for total disability, relying on billing records which the insurer-defendant believed showed that the plaintiff had received approximately 80% of his pre-disability revenues from non-invasive cardiology, the defendant found that the plaintiff was not totally disabled.  The Court held that where an insured practiced a specialty, such as surgery, but did not confine himself to it, also maintaining a substantial non-surgical practice, the insured is not totally disabled by an inability to operate.  *Id.* at 532.  The Court found that there was too much continuity between the insured's work before and after the beginning of his back condition to sustain a "total disability" finding, noting that the insured had prospered as a

cardiologist both before and after the problem, and that the plaintiff had, at most, become unable to perform the 50% of his duties which he had spent performing invasive cardiology procedures.  At best, before his back problems, the plaintiff had been a cardiologist performing two sets of duties, consultative and invasive.  *Id.* at 533.  The plaintiff's undisputed ability to continue performing his consultative duties after the onset of his back problems meant he was not totally disabled.  *Id.* at 534.

Similarly, here, in Dr. Socas' August 1, 2005 request for disability benefits, she stated that she was a general practitioner who, before the accident, worked 48 to 60 hours with 50% of her practice consisting of general dentistry, 20% crowns and bridges, 10% oral surgery, 10% endodontics and 10% periodontics (DE # 123-4 at 1).  She stated that, at the time of the request, she practiced general dentistry for approximately 21 hours a week, performing some crown and bridge work, some oral surgery, some endodontics and some periodontics (DE # 123-3 at 2-3; 123-10 at 125-37).

As in *Hershman*, there is too much continuity between Dr. Socas' work before and after the automobile accident to make a finding of "total disability."  Dr. Socas was successful as a dentist both before and after the accident.  After the accident, Dr. Socas was, at most, unable to perform the 40 to 50% of her duties which she had spent performing crowns and bridges, oral surgery, endodontics and periodontics.  The undersigned notes that Dr. Socas still performs the following activities: crown and bridge work; simple oral surgery, non-surgical endodontics and non-surgical periodontics.  At best, before the car accident, Dr. Socas had been a dentist with two sets of duties, general dentistry and specialized, more complex dental procedures.  Dr. Socas' undisputed ability to continue performing general dentistry after her automobile accident means that she was not totally disabled.

There is no issue of material fact that Dr. Socas can perform many or most of the duties of general dentistry.  Notably, at her deposition, Dr. Socas testified that she is not totally disabled from being a general dentist, but is partially disabled from being a general dentist because she can't perform some of the procedures she used to perform before the accident, and that when she finally filed her notice of claim with Northwestern in 2006, she considered herself partially disabled from the practice of general dentistry from January 1, 1996 to the present  (October 3, 2008 Deposition of Dr. Socas, DE # 102-2 at 210, 213; DE # 123-4 at 1).  Dr. Socas specifically testified that the only duties that she can no longer perform involve surgical procedures which require that she spend extended periods in a hunched-over posture (October 3, 2008 Deposition of Dr. Socas, DE # 123-10 at 127-138).   Dr. Roberta Diehl, who was a general dentist from 1986 to 1991 and who now works with Dr. Socas at the University of Florida Hialeah Dental Clinic, defined general dentistry at her deposition as treating all patients of all ages providing services that would cover some of the specialties, but doing them at a level that the general dentist is most comfortable, and feeling free to refer to specialists as necessary (December 17, 2008, Deposition of Dr. Roberta Diehl, DE # 123-6 at 6-7).  As Dr. Diehl testified at her deposition, a general dentist does specialized dental procedures at a level with which the general dentist is most comfortable, and the general dentist feels free to refer patients to specialists as necessary.  This is a description of Dr. Socas' present practice.  Dr. Diehl stated that the dental specialties are endodontics, periodontics, oral surgery, prosthodontics, pediatrics, orthodontic and public health dentistry.  If it is not one of the specialties, it falls under general dentistry (December 17, 2008, Deposition of Dr. Roberta Diehl, DE # 123-6 at 6-7).  Dr. Socas has only ceased performing specialized dental procedures requiring her to spend extended periods in a

16

hunched-over posture.

Dr. Socas was treated by only one physician who told her to stop practicing completely, Dr. Jose Joy, who gave this opinion on January 17, 2006 (DE # 123-9 at 103-04; DE # 123-28).  Nevertheless, Dr. Socas continued to practice dentistry (DE # 123-9 at 103-04).  On April 15, 1996, Dr. Bruce Kohrman, Dr. Socas' treating neurologist at the time, stated that Dr. Socas was able to work full-time and had attained Maximum Medical Improvement at an 11% impairment (DE # 123-30).   On October 21, 1996, the last time until September 13, 2005 that Dr. Socas was treated by a physician for her back injuries, Dr. Kohrman stated that Dr. Socas was able to work part-time (DE # 123-31).

Dr. Socas contends that the principal duties of her profession of general dentistry are performing advanced dental procedures and complex surgeries, that since the accident she cannot perform these duties, and, thus, she is totally disabled.  However, these procedures constituted between 50 and 60% of her practice before the accident.  Moreover, she continues to practice general dentistry part-time.

Dr. Socas' reliance on *Dowdle* is misplaced.  In *Dowdle*, the District Court granted summary judgment to an orthopedic surgeon on his claim of total disability because 85% of his practice was surgery and related care and he could no longer perform any orthopedic surgery.   407 F.3d at 968-69.  However, here Dr. Socas is a general dentist, not an oral surgeon, a periodontist or an endodontist.  She can still perform the duties of a general dentist.  This fact also distinguishes Dr. Socas' reliance on *Gross v. UnumProvident Life Ins. Co.*, 319 F.Supp. 2d. 1129, 1131 (C.D. Ca. 2004), in which an orthopedic surgeon who could no longer perform surgery was found to be totally disabled, and *Pomerance v. Berkshire Life Ins. Co. of Am.*, 654 S.E. 2d. 638, 640 (Ga. Ct. App.. 2007), in which an obstetrician/gynecologist who could no longer deliver babies

17

was found to be totally disabled.

In sum, Dr. Socas' condition may be consistent with the definition of "partial disability," but it does not meet the standard for "total disability," even under the more favorable *Giddens* standard.

B. <u>Dr. Socas Has Failed To Comply With the Policies' Notice of Claim Provisions</u>

Even assuming that Dr. Socas met the definition of "total disability," however, the undisputed facts establish that Dr. Socas failed to comply with the Policies' Notice of Claim provisions, which require notice of claim to be given to Northwestern within 60 days of the beginning of the loss, or as soon as is reasonably possible.  Dr. Socas is claiming for a period of loss which began in April 1996, but she did not file a Notice of Claim until August 2005.  Since Dr. Socas failed to comply with the Policies' Notice of Claim provision until August 2005, she is therefore barred from bringing any claim prior to June 2005.  *See Lane v. Provident Life & Accident Ins. Co.*, 178 F. Supp. 2d 1281, 1285-90 (S.D. Fla. 2001) (in Florida, a provision in a disability policy requiring that notice of a claim be provided within a specified period of time is enforceable).

The delayed filing of the claim has obviously prejudiced Northwestern, as it has resulted in Dr. Socas destroying relevant patient records which would have assisted Northwestern in evaluating Dr. Socas' untimely claim.  *Lane*, 178 F. Supp. 2d at 1287.  Dr. Socas cannot meet her burden to show that Northwestern was not prejudiced by her untimely notice of claim.  *Lane*, 178 F. Supp. 2d at 1287.

However, Dr. Socas argues that Northwestern has waived its right to rely on her failure to timely file a claim.  In support of this argument, Dr. Socas contends that when she gave notice of her claim in 1995 to her then-Northwestern agent, Oscar Pina, Pina told her she had no claim.  In her response to Northwestern's motion, Dr. Socas states

that she relied on Pina's statement and, so, did not file a claim under her disability policies until 2005, almost ten years later. To support this argument, Dr. Socas relies on 1) a statement by her now-Northwestern agent, Robert Nuno, to Northwestern's representative on September 2, 2005, in which Nuno stated that Pina had told Dr. Socas in 1995 that she had no claim and that Dr. Socas relied on Pina's statement (DE # 123-2) and 2) Nuno's deposition testimony that Dr. Socas had told him that in 1995, Pina had told her she had no claim, so she did not file a claim at that time (October 7, 2008 deposition of Robert Nuno, DE # 123-3 at 22) (DE # 123 at 2, para. 8).

The hearsay evidence of Nuno, stating what Dr. Socas had told him about what Pina told her in 1995, is inadmissible. *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1349 (11th Cir. 2007) (evidence which is inadmissible at trial cannot be used to avoid summary judgment). It is clear that Nuno had no personal knowledge concerning what Pina told Dr. Socas in 1995.

Dr. Socas testified at her October 3, 2008, deposition about her conversation with Pina in the fall of 1995 (DE # 102-1 at 8-18). However, Dr. Socas' testimony about what she and Pina discussed at that time, what she told Pina and what Pina told her, are too vague to establish a wavier on the part of Northwestern. For example, Dr. Socas conceded that when she had spoken to Pina, neither she nor Pina knew of the extent of her injuries (DE # 102-2 at 8). Dr. Socas did not remember whether she had spoken to Pina on the telephone or in person (DE # 102-2 at 9-10). She testified that she thought she had spoken to Pina in the fall of 1995, and that she had told him that she had been hurt in a car accident, she was wearing an abdominal brace, and was not working as much as she had been (DE # 102-2 at 11-12). She thought that Pina had told her that since she was planning to return to work, she did not have a claim (DE # 102-2 at 12).

Dr. Socas finally testified that "Hindsight was 20/20," and that while she didn't think in 1995 that Pina had done anything wrong, in 2008, she thought that Pina had failed to do his job correctly by not telling her to file a claim (DE # 102-2 at 17).

Dr. Socas' reliance on the argument that Northwestern is estopped from raising the timeliness argument is misplaced.  Dr. Socas has provided no evidence, much less clear and convincing evidence, of willful misconduct on the part of Northwestern, which is required to prove that Northwestern waived a contractual right.  *See Winans v. Weber*, 979 So. 2d 269, 274 (Fla. Dist. Ct. App. 2007); *Liberty Mutual Ins. Co. v. Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1315 (S.D. Fla. 2008).

Therefore, Dr. Socas failed to comply with the Policies' Notice of Claim provision until August 2005, and is barred from bringing any claim prior to June 2005.

C.  Dr. Socas Has Failed To Comply With the Policies' Proof of Loss Provisions

It is undisputed that Dr. Socas failed to comply with the Policies' Proof of Loss provisions, which require written proof of disability to be given to Northwestern within 90 days after the end of each monthly period for which benefits are claimed.  The Policies also state that if the proof is not given within the 90 days, the claim will not be affected if the proof is given as soon as reasonably possible.  The Policies go on to state that, in any event, the proof required must be given no later than one year after the end of each monthly period for which benefits are claimed unless the Owner was legally incapacitated.[5]  Dr. Socas is claiming for a period of loss which began in April 1996, but did not file Written Proof of Disability until August 2005.  As Dr. Socas failed to comply with the Policies' Proof of Loss provision until August 2005, she is, therefore, barred

---

[5]  There is no contention that Dr. Socas was legally incapacitated.

from bringing any claim prior to May 2005.  *See Lane v. Provident Life & Accident Ins. Co.*, 178 F. Supp. 2d 1281, 1285-90 (S.D. Fla. 2001) (in Florida, a provision in a disability policy requiring that notice of a claim be provided within a specified period of time is enforceable).

There is no doubt that the delayed filing of the proof of loss has prejudiced Northwestern, as it resulted in Dr. Socas destroying relevant patient records which would have assisted Northwestern in evaluating Dr. Socas' untimely claim.  *Lane*, 178 F. Supp. 2d at 1287.  Dr. Socas cannot meet her burden to show that Northwestern was not prejudiced by her untimely proof of loss.  *Lane*, 178 F. Supp. 2d at 1287.

Initially, Dr. Socas again argues that Northwestern has waived its right to rely on her failure to timely file proof of loss.  In support of this argument, Dr. Socas contends that when she gave notice of her claim in 1995 to her then-Northwestern agent, Oscar Pina, Pina told her she had no claim.  In her Response to Northwestern's Motion, Dr. Socas states that she relied on Pina's statement and, so, did not file a claim under her disability policies until 2005, almost ten years later.  However, in support of this position, Dr. Socas relies on the same evidence previously discussed in connection with the Notice of Claim provisions of the policies.  For the same reasons previously discussed, Dr. Socas has not provided sufficient evidence upon which to base a finding of waiver with respect to the proof of loss requirement.

Dr. Socas again misplaces her reliance on her argument that Northwestern is estopped from raising the timeliness argument.   To reiterate, Dr. Socas has provided no evidence, much less clear and convincing evidence, of willful misconduct on the part of Northwestern, which is required to prove that Northwestern waived a contractual right.  *See Winans v. Weber*, 979 So. 2d 269, 274 (Fla. Dist. Ct. App. 2007); *Liberty Mutual Ins.*

*Co. v, Aventura Eng'g & Const. Corp.*, 534 F. Supp. 2d 1290, 1315 (S.D. Fla. 2008).

Therefore, Dr. Socas failed to comply with the Policies' Proof of Loss provision until August 2005, and, therefore, is barred from bringing any claim prior to May 2005.

### D.  Dr. Socas' Breach of Contract Cause of Action is Time-Barred

In the Policies at issues here, the proof of loss clause is tied to the clause stating that no legal action may be brought after five years from the time that written proof is required to be given.[6]  Dr. Socas filed this action on February 8, 2007.  The statute of limitations bars any legal action regarding any proof of loss which was required to be given on or before February 8, 2002.  On or before February 28, 2002, Dr. Socas was required to file a Proof of Loss for any benefits claimed for the month of November 2001. Therefore, pursuant to the relevant statute of limitations and the policy clause stating that Dr. Socas could not bring suit against Northwestern after the applicable statute of limitation had run as to the time Dr. Socas was required to provide written proof of loss, Dr. Socas is barred from recovering any benefits for any period preceding November 2001.  *Cf. Starling v. Allstate Floridian Ins. Co.*, 956 So. 2d 511, 512-13 (Fla. Dist. Ct. App. 2007) (the insurer obtained summary judgment against the insured because the insured had not submitted a proof of loss within the required 60 days and the policy stated that the insured could not bring suit against the insurer unless the insured had fully complied with all of the policy terms); *First Am. Title Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 695 So. 2d 475, 476 (Fla. Dist. Ct. App. 1997) (where the insured had failed to notify the insurer of a lawsuit brought against insured by a third party and the insured agreed to the entry of a consent judgment without seeking the insurer's

---

[6] The statute of limitations in Florida for a breach of contract action is five years. *See* Fla. Stat. 95.11(2)(b).

permission, the insurer was granted summary judgment against the insured and the third party based on the insured's failure to comply with the policy's prohibition against unauthorized settlements and the policy's requirement that the insured could not sue the insurer unless the insured fully complied with all the terms of the policy).

Dr. Socas, raising the doctrines of equitable tolling and equitable estoppel, contends that her claims prior to November 2001 are not barred by the statute of limitations, because Pina told her she had no claim.  As has been previously stated, the only evidence of Pina's statement is inadmissible hearsay, which cannot be the basis for Dr. Socas' claims.  Furthermore, in Florida, the application of equitable tolling is limited to administrative proceedings.  *See HCA Health Servs. of Florida, Inc. v. Hillman*, 906 So. 2d 1094, 1098-1100 (Fla. Dist. Ct. App. 2004). Therefore, these arguments must fail.

Finally, Dr. Socas claims that equity prefers not to enforce the breach of contractual provisions which result in extreme forfeiture, if the result would be unconscionable.  However, the undersigned finds again that the result would only be unconscionable if Pina, an agent of Northwestern, had told Dr. Socas in 1995 that she did not have a claim, and that, as a result, Dr. Socas did not file a claim for ten years. However, again, the only evidence of this is inadmissible hearsay.  Moreover, this Court cannot act in equity to alter or excuse the parties' obligations under a contract, especially where no relief is now available to cure Dr. Socas' failure to comply with the relevant policy provisions.  *See Beach Resort Hotel v. Wieder*, 79 So. 2d 659, 663 (Fla. 1955); *Racer v. Rather*, 130 So. 15, 16-17 (Fla. 1930); *Goldman v. State Farm Fire General Ins. Co.*, 660 So. 2d 300, 305 (Fla. Dist. Ct. App. 1995).   Therefore, this argument is also rejected.

**E.  Dr. Socas Has Failed To Comply With the Policies' Care and Attendance
Provisions**

It is undisputed that benefits under the Policies are only available if the insured is
under the care of a licensed physician during the time of her disability.  It is also
undisputed that Dr. Socas was not under the care of a licensed physician during the
period from October 1996 to August 2005, but was treated by massage therapists, a
chiropractor and an acupuncturist.  Care and attendance clauses are enforceable in
Florida.  *See Mack v. Unum Life Ins. Co. of America*, 471 F. Supp. 2d 1285, 1289 (S.D. Fla.
2007).  Therefore, Northwestern is entitled to summary judgment on this issue and Dr.
Socas is barred from receiving any benefits for the period from October 1996 to August
2005.

Dr. Socas relies on *Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356,
1358 (11th Cir. 1982) for the principle that the Florida Supreme Court would not require a
finder of fact to enforce a care and attendance clause if continued treatment would be
useless.  Dr. Socas then contends that in October 1996, Dr. Kohrman had told her that
she had reached Maximum Medical Improvement (MMI), thus any treatment would be
useless; and, this Court should not enforce the care and attendance provision.

The undersigned disagrees and finds that there is no genuine issue of material
fact as to whether any continued medical treatment of Dr. Socas after October 1996
would have been useless.  While Dr. Kohrman testified at his deposition that MMI meant
there is no expectation that the person would get better, he also testified that MMI did
not mean that further treatment would be completely useless (January 7, 2009
Deposition of Dr. Bruce Kohrman at 27-28, DE # 132 at 23).  Dr. Socas has not provided
any evidence that continued medical treatment after October 1996 would have been

useless.

Furthermore, in the absence of care by a licensed physician, Dr. Socas' condition did worsen in 2005, which provides further support for the necessity of continuing care for Dr. Socas by a licensed physician during her alleged period of disability. *See Mack v. Unum Life Ins. Co of America*, 471 F. Supp. 2d at 1289.

Therefore, the undersigned finds that Northwestern is entitled to summary judgment on this issue and Dr. Socas is barred from receiving any benefits for the period from October 1996 to August 2005.

Therefore, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion for Final Summary Judgment (DE # 107), is **GRANTED**.

**DONE AND ORDERED** in chambers in Miami, Florida on November 2, 2011.

*Andrea M. Simonton*

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF
to all counsel of record